UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO: |
| | : | 3:18 CR 260 (MPS) |
| v. | : | |
| | : | |
| | : | |
| XAVIER DIAZ | : | November 12, 2019 |

**DEFENDANT XAVIER DIAZ'S**
**MEMORANDUM IN AID OF SENTENCING**

The Defendant Xavier Diaz ("Xavier," "Mr. Diaz" or "Defendant"), in accordance with Rule 32(o) of the Local Rules of Criminal Procedure, respectfully submits this memorandum in aid of sentencing in connection with the above-captioned matter. Based on consideration of all the factors set forth in 18 U.S.C. § 3553(a), including the United States Sentencing Guidelines (the "Guidelines"), the Defendant asks the Court to impose the mandatory minimum sentence, which is the guidelines range stipulated to by the parties, of 60 months.

**I.    The Sentencing Factors In 18 U.S.C. § 3553(a) Support A Sentence of 60 Months**

For the reasons set forth below, the circumstances specific to the Defendant, addressed in a manner consistent with purposes of the federal sentencing scheme, justify a sentence of 60 months.

    **A.    The History and Characteristics of the Defendant and the Nature and Circumstances of the Offense**

**Childhood**

Xavier is 30 years old. He was born in Fajardo, Puerto Rico in 1989. He is the youngest of 4 maternal siblings, all with different fathers. His father was never involved in his life and he has no contact, connection or even information about him. His mother suffered from mental illness, stopped bathing herself or caring for her children when Xavier turned 8 and would

disappear for months at a time and could be found roaming the streets. There was often no food in the house and Xavier was often left alone.

His mother ostensibly raised him until he was 10 years old but then suddenly, and without warning, disappeared permanently. He and his siblings begged on the street for food and were on their own for about a year. He did not go to school. At that time social services became involved and placed him in foster care with a woman who was related to his grandfather and who was compensated by the State for caring for them. Her husband was an alcoholic who was verbally abusive when drunk. He was told he was worthless and a mistake and should not have been born. The environment was toxic with pervasive drugs and alcohol. He spent much of his childhood hungry, alone and afraid and has no happy memories of childhood.

At age 11, Xavier began using drugs, first marijuana, then alcohol, then cocaine, oxycodone, xanax and eventually heroin. At the time of his arrest in this case, he was using cocaine and heroin daily. He detoxed in jail and undersigned counsel observed him at presentment very, very sick.

Unsurprisingly, Xavier started 10th grade, but did not finish and by age 15 was on the streets, using drugs. He has made three prior attempts to get clean, once an inpatient program in New Jersey that he was expelled from, and then two subsequent detox programs that did not take. As set forth below, he has been in recovery since his arrest.

After discharge from the treatment program in New Jersey at age 20, Xavier moved to Willimantic, where he has lived since. His only criminal history involves two Breaches of Peace, Second Degree, 7 and 8 years ago, respectively, involving verbal altercations, which do not result in any criminal history points. He has no prior narcotics offenses.

Xavier is in a loving, committed relationship with Sonielly Rivera (a codefendant), and they reside together with Sonielly's two adult and one 16 year old child in a new apartment, apart from where the criminal conduct occurred.

**The Offense**

The relevant facts of the offense conduct are not in dispute. The overall conspiracy began in January 2017 and ended with the arrests in October 2018. Xavier served in the leadership role, obtaining the heroin and directing the others. The conspiracy involved the use of one phone, used by runners at different times, to deliver heroin to customers who called the line. The quantity of heroin reasonably foreseeable to Xavier as a result of the offense is at least 100 grams but less than 400 grams.

**Post Arrest**

On October 18, 2018, Xavier was presented before the Honorable Robert A. Richardson, and the undersigned counsel was appointed. Counsel requested a bond hearing at a date in the future, upon counsel locating available and appropriate inpatient substance abuse treatment. On October 24, 2018, after a hearing, on application by undersigned counsel who had located a bed, Defendant was released to Intercommunity, an inpatient substance abuse treatment in Hartford, on a $50,000 non-surety bond. On November 7, 2018, Defendant appeared voluntarily at his arraignment after return of the Indictment. On November 20, 2018, the Defendant completed the 28 day program at Intercommunity and Pretrial Services located a bed for him at Casa Hosta in Bridgeport, for additional residential treatment. On December 18, 2018, on Motion of the Defendant, The Honorable Robert A. Richardson permitted the defendant to transition to the Nexus House, a structured Sober House in Bridgeport after Defendant had successfully

completed inpatient treatment program and permitted him to further transition to Intensive Outpatient Treatment.

On February 20, 2019, The Honorable Robert A. Richardson, on motion of the Defendant, after hearing, modified the conditions of the Defendant's release to allow him to reside in the community in Willimantic and attend outpatient treatment.  On June 29, 2019, on motion of the Defendant, the court further modified the conditions to permit Xavier and Sonielly to reside together.

In all, Xavier has been released since October 24, 2018 without incident.  He has complied with all conditions.  He has progressively moved through less restrictive conditions successfully.  He has complied with all treatment obligations and, as soon as he was able, obtained a full time job.  He is currently successfully participating in medically assisted treatment for his opiate addiction.  He has been the most successful post arrest opiate addict that the undersigned has represented.

Following his release from inpatient treatment, Xavier found a job and has held full time employment either as a janitor or other cleaning capacity, and currently works at an egg farm cleaning the machinery.

On August 29, 2019, Defendant entered a plea of guilty to Count One of the Superseding Indictment, which charged him with conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846, and his release was continued on the same conditions.

**Counsel's Observations**

I find Xavier to be funny and considerate but burdened by his extremely difficult childhood and his significant opiate addiction.  While he has worked incredibly hard and

medically assisted treatment coupled with the substance abuse counseling has been successful, I don't believe the mental health issues have been adequately addressed. He has been committed to treatment and completely compliant. He has expressed and shown an eagerness, as well as the capacity, to put heroin behind him. He has expressed a desire to accept responsibility from the beginning and also recognized and accepted incarceration as an appropriate penalty for his conduct. His interactions with Sonielly have been gentle and appropriate.

### B. The Kinds of Sentences Available

The penalty for violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B) is imprisonment of not less than 5 years and no more than 40 years, and not less than 4 years supervised release.

### C. The Need to Avoid Unwarranted Sentence Disparities Among Defendants With Similar Records who Have Been Found Guilty of Similar Conduct

Because a sentence of 60 months is the Guidelines range determined by the parties, sentencing disparity is not a significant issue. Nevertheless, to the extent that the Court contemplates a guidelines calculation above that which the parties agreed, approximately 56% of Heroin offenders received a below guidelines sentence in 2018. [1] 36% of all Heroin offenders received a below guidelines sentence that was not government sponsored. Id. In fiscal year 2018, these offenders received an average reduction in their sentence of 39.5%. Id. 53.5 % of heroin offenders were subject to a mandatory minimum sentence and nearly half of them were relieved of that penalty. Accordingly, a 60 Month sentence would not result in any sentence disparity regardless of the guidelines calculation used by the Court.

Any disparity present to defendants in other cases is otherwise warranted based on the history and characteristics of the defendant and the nature of the offense as set forth herein.

---

[1] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Heroin_FY18.pdf

D. **Consideration Of The Sentencing Guidelines**

1. **Offense Level**

The parties stipulated to a heroin quantity of between 100 and 400 grams and that the Defendant was subject to a 2 level aggravating role enhancement. Accordingly, the parties agreed to a total offense level calculation (using 2018 Guidelines), as follows:

a. Base Offense Level, Offense Guideline, § 2D1.1(a)(5), (c)(8); and Comment 8.(D)     24

     Leadership Role, § 3B1.1(c)     +2
     Acceptance of Responsibility, § 3E1.1     -3

b. Adjusted Offense Level     23

2. **Criminal History**

As articulated above, the Defendant has no criminal history points. The Defendant has never previously served a period of incarceration. The Defendant has been doing exceptionally well since his arrest in this case.

3. **Sentencing Table**

An Adjusted Offense Level of 23 and a Criminal History Category of I results in a Guidelines range of 46-57 months, which resolves up to a range of exactly 60 months on the operation of the mandatory minimum sentence.

4. **Other enhancement/Departure/Variance Considerations**

As set forth in the Plea Agreement:

The parties agree that *neither a downward nor an upward departure from the sentencing range set forth above is warranted* and that a sentence within the agreed range is reasonable. *Accordingly, neither party will seek a departure or seek any adjustment not set forth herein*. Moreover, the defendant will not seek a non-Guidelines sentence. *Nor will either party suggest that the Probation Department consider a departure or adjustment not set forth herein, or suggest that the Court on its own consider a departure or adjustment not identified above*.

Plea Agreement, P. 5 (emphasis added). The PSR contemplates two adjustments not set forth in the Plea Agreement and identifies but does not recommend two grounds for upward departure not set forth in the Plea Agreement. Defendant's objections are included with the final PSR and are claimed hereby, except as set forth below.

## II. A Guidelines Sentence of 60 Months is Reasonable

### A. A Two Level Leadership Enhancement Equivalent is Reasonable

The background to §3B1.1 provides that: "In relatively small criminal enterprises that are not otherwise to be considered as extensive in scope or in planning or preparation, the distinction between organization and leadership, and that of management or supervision, is of less significance than in larger enterprises that tend to have clearly delineated divisions of responsibility. This is reflected in the inclusiveness of §3B1.1(c)[which applies a 2 level increase instead of 3 or 4 levels]." §3B1.1.

Accordingly, leadership of a relatively small operation that is not relatively extensive in scope planning or operation, is appropriately considered for a 2 level enhancement. The parties carefully examined this issue in negotiating the Plea Agreement and concluded that a 2 point enhancement was most appropriate. The operation here involved one phone and a small number of individuals, using the one phone at different times. It was not relatively extensive in scope, planning or preparation. That was the thinking of the parties in good faith agreeing to a 2 level enhancement.

However, counsel is obligated to disclose the subsequently discovered authority of United States v. Cotto, 979 F.2d 921 (2d Cir. 1992) which held that once it is determined that there are 5 participants, and that the Defendant had some supervisory role "the sentencing judge therefore had only the choice of a three- [or in this case 4] level enhancement or no

enhancement" and may not impose a "compromise outcome" of 2 levels.  United States v. Cotto, 979 F.2d 921, 923 (2d Cir. 1992).  In other words, the Court does not have discretion to impose a 2 level enhancement if there are 5 or more participants.

However, "[w]hile U.S.S.G. § 3B1.1 allows no compromise, the same cannot be said of 18 U.S.C. 3553(a) [and the] the district court, treating the Guidelines as advisory [may impose] a non-Guidelines sentence equivalent. . . . " United States v. Moya, 276 F. App'x 30, 32–33 (2d Cir. 2008).  Defendant requests that the Court do so for the reasons stated or otherwise vary under Unites States v. Fernandez, 844 F.2d 1138 (2d Cir. 1989) to give effect to the parties' Plea Agreement.

### B.  A Firearm Enhancement is Not Warranted

The parties did not include a firearm enhancement under §2D1.1(b)(1), which provides that if "a dangerous weapon (including a firearm) was possessed, increase by 2 levels." Application Note 11 proves that: "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."

A "pitted" and "rusted" handgun was found <u>outside</u> the home on the roof in the elements with indications that it had been there for some time.  There was nothing presented to tie that firearm to the Defendant.  No fingerprints were identified on the gun and no scientific testing connected the gun to the Defendant.  There is no testimony regarding use or storage of that firearm in connection with the offense or that firearm to the defendant or a co-conspirator.  There was no evidence presented that the gun was operational or readily accessible.  Thus, the weapon was arguably not "present" and further improbably connected to the offense, given its location and condition.

Thus, the parties appropriately agreed not to include it in the Plea Agreement. To the extent the Court concludes otherwise, Defendant requests that the Court vary for the reasons stated or under Unites States v. Fernandez, 844 F.2d 1138 (2d Cir. 1989) to give effect to the parties' Plea Agreement.

### C. No upward Departures are Warranted

The Parties agree that no upward departures are warranted. The PSR references but explicitly makes no recommendation regarding application of upward departures under Policy Statement 5K2.1 and 5K2.21. Neither departure would be appropriate and no one is recommending their application.

Nevertheless, the evidence in this case would not be sufficient to support an upward departure under 5K2.1 (Death). There would be no evidence of direct communication between Defendant and the victim at or near the time of death sufficient to establish the requisite state of mind; no evidence of the defendant's express direction to others sell drugs to the victim (in fact the opposite would be true in this case); there is no toxicity evidence or proof that decedent's death could not be caused by use of other drugs purchased from others. See United States v. Tessina, No. 15-CR-130, 2017 WL 6345400, at *12 (W.D.N.Y. Dec. 12, 2017) (citations omitted)( "None of the evidence submitted is akin to the evidence in other cases departing upward under Section 5K2.1.").

Application of 5K2.21 would also be inappropriate. 5K2.21 provides that:

The court may depart upward to reflect the actual seriousness of the offense based on conduct (1) *underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued* in the case as part of a plea agreement or for any other reason; and (2) that *did not enter into the determination of the applicable guideline range*.

(Emphasis added). The Defendant plead guilty to the <u>charge</u> of conspiracy to distribute narcotics. This charge was pursued and the conduct was factored into the sentence. It would be improper double counting to utilize this provision to enhance a sentence under 2D1.1 for conduct would fall under 2D1.1 as relevant conduct. In any event, no party is advocating for these departures.

### D. Post Arrest Rehabilitation Warrants a 60 Month Sentence

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. Underlying this tradition is the principle that the punishment should fit the offender and not merely the crime." <u>Pepper v. United States</u>, 562 U.S. 476, 487–88 (2011). "Congress could not have been clearer in directing that no limitation be placed on the information concerning the background, character, and conduct of a defendant that a district court may receive and consider for the purpose of imposing an appropriate sentence." <u>Id</u>. at 490–91 (citing 18 U.S.C. § 3661).

With respect to post-arrest, even post-sentencing rehabilitation, such evidence should be considered closely by a sentencing court:

> evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing. For example, evidence of postsentencing rehabilitation may plainly be relevant to "the history and characteristics of the defendant." § 3553(a)(1). Such evidence may also be pertinent to "the need for the sentence imposed" to serve the general purposes of sentencing set forth in § 3553(a)(2)—in particular, to "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training ... or other correctional treatment in the most effective manner." §§ 3553(a)(2)(B)-(D); Postsentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to "impose a sentence sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in § 3553(a)(2).

Pepper, 562 U.S. at 491 (citing with approval United States v. McMannus, 496 F.3d 846, 853 (8th Cir.2007) (Melloy, J., concurring) ("In assessing at least three of the Section 3553(a) factors, deterrence, protection of the public and rehabilitation, 18 U.S.C. § 3553(a)(2)(B)(C) & (D), there would seem to be no better evidence than a defendant's post-incarceration conduct").

Defendant has successfully completed over a year of substance abuse treatment while on pre-trial release with decreasing supervision. He has sought and obtained full time employment. He has remained substance and offense free. He has willingly and enthusiastically done everything asked of him.

With proof that he can maintain a steady job, and without the need to fund a debilitating addiction to heroin and cocaine, he has addressed the underlying circumstances that contributed to his offense, he is much less likely to offend again in the future. He has achieved remarkable rehabilitation.

 **C.** **The Principle of Incremental Punishment Warrants a Measured Increase from Defendant's Lack of a Prior Sentence of Incarceration**

The Court is directed by 18 U.S.C. § 3553(a), after consideration of circumstances particular to the individual before the Court, to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes set forth therein. (Emphasis added). This so called "parsimony clause" incorporates the principle of incremental punishment which states that courts should generally impose incrementally increased punishment for repeated similar offenses to achieve specific deterrence.

A sentencing court may consider "the relationship between the punishment prescribed by [the guidelines] and the degree of punishment imposed for prior offenses" and that the "disparity in that relationship might indicate that the [guidelines] sentence provides a deterrent effect [] in excess of what is required in light of the prior sentences and especially the time served on those

sentences . . . . " United States v. Mishoe, 241 F.3d 214, 220 (2d Cir. 2001) (analyzing career offender and departures pre-Booker). Xavier has no prior sentences of imprisonment and thus has had no opportunity to be deterred. The Court is required to impose a 60 Month sentence but any additional increase would be unwarranted and counter to the principles of sentencing.

### III. A Sentence of 60 Months Is Sufficient But Not Greater Than Necessary To Comply With The Purposes Of Sentencing

#### A. The Need For The Sentence Imposed To Reflect The Seriousness Of The Offense And Promote Respect For The Law

A 5 year sentence in this case imposes a significant period of incarceration and adequately reflects the seriousness of this offense.

Further, by appearing as required, complying with his pretrial supervision officers, obtaining full time employment, and by his respectful treatment of all involved in this process, Mr. Diaz has demonstrated that he has respect for the law.

In terms of general deterrence, in light of the opioid epidemic, general deterrence would seem to mandate the most severe sentence possible on heroin traffickers. However, multiple studies have shown that "enhancing the certainty of punishment produces a stronger deterrent effect than increasing the severity of punishment." Deterrence in Criminal Justice, Valerie Wright, Ph.D., 2010.[2] While the Court must consider general deterrence, there is no basis to conclude that sentencing this defendant to more than 60 months would be a greater general deterrent to criminal conduct by others than a sentence of 60 months:

> [M]odern deterrence research has failed to find consistent evidence of the deterrent effects of punishment. Empirical evidence on the deterrent effects of punishment remains speculative and inconclusive, and the ability of formal punishment alone to deter crime appears to be quite limited.

---

[2] http://www.sentencingproject.org/wp-content/uploads/2016/01/Deterrence-in-Criminal-Justice.pdf.

- 12 -

Meares, Tracey L.; et al, "Updating the Study of Punishment" (2004).[3] Further, the Court must treat the defendant as an individual and balance general deterrence with the strong need to rehabilitate, which incarceration does not advance. In this case, general deterrence is sufficiently satisfied by a sentence of 60 months.

### B. The Need For The Sentence Imposed To Provide Just Punishment For The Offense

Punishment must be "just." Here the Defendant is both the dealer and user of Heroin. He is a seller and an addict. His offense conduct both supported and he would say ruined his life. A just sentence reflects the history and circumstances beyond his control that started him down this path, and the difficult disease that is addiction, while reflecting the personal responsibility he has accepted for his conduct.

### C. The Need For The Sentence Imposed To Afford Adequate Deterrence To Criminal Conduct And Protect The Public From Further Crimes Of The Defendant

The Defendant's post-arrest rehabilitation is a ground to be considered at sentencing for a variance from any Guidelines calculation that differs from the Plea Agreement. As the Supreme Court has cited, post-conduct rehabilitation is pertinent to and may be the best evidence available to the court as to the need to provide adequate deterrence to criminal conduct and protection of the public from further crimes of the defendant. Pepper v. United States, 562 U.S. 476, 491, (2011). The defendant has thrived on pre-trial release.

As noted above, a working, clean Xavier Diaz is not a material recidivism risk and incapacitation beyond that mandated may not be required to protect the public. With this

---

[3] http://digitalcommons.law.yale.edu/fss_papers/520?utm_source=digitalcommons.law.yale.edu%2Ffss_papers%2F520&utm_medium=PDF&utm_campaign=PDFCoverPages.

- 13 -

defendant, employment and treatment address the criminal conduct directly, better than any term of imprisonment.

### D. The Need For The Sentence Imposed To Provide Rehabilitation To The Defendant in the Most Effective Manner

The Sentencing Reform Act of 1984 directs that:

The Court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in 3553(a) to the extent that they are applicable, *recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation*.

18 U.S.C. § 3582(a) (emphasis added). Over the past 13 months, through the Defendant's successful pre-trial release, we have developed proof of the most effective way to provide "correctional treatment in the most effective manner." See Pepper v. United States, 562 U.S. 476, 491 (2011). With coordinated support and supervision, the Defendant has obtained and maintained full time employment and education and complied with all conditions set by the Court and probation. With the employment and treatment directly addressing the triggers for this defendant's criminal conduct, rehabilitation is particularly on point in this case and would not be advanced by incarceration beyond that which is required, and is thus adequately addressed by the requested sentence pf 60 months.

## IV. Conclusion

For all the foregoing reasons, the Defendant respectfully requests that the Court, after consideration of all the factors in 18 U.S.C. § 3553(a), sentence the defendant to 60 months incarceration.

DEFENDANT,
XAVIER DIAZ

By:   /s/ Morgan P. Rueckert
      Morgan P. Rueckert
      Federal Bar No. ct 19838
      Shipman & Goodwin LLP
      One Constitution Plaza
      Hartford, CT  06103
      Tel:  (860) 251-5821
      Fax:  (860) 251-5219
      Email:  Mrueckert@goodwin.com
      His Attorney

## Certificate of Service

      I hereby certify that on November 12, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. A copy will be emailed to:

Michelle Murphy
United States Probation Officer
United States Probation Office
450 Main Street
Hartford, CT 06103

A draft copy was emailed to Counsel for the Government on November 8, 2019.

                                            /s/ Morgan P. Rueckert
                                            Morgan P. Rueckert
                                            Fed. Bar No. ct19838
                                            Shipman & Goodwin LLP
                                            One Constitution Plaza
                                            Hartford, CT 06103

8123558v1