UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:18cr260(MPS) |
| | : | |
| v. | : | |
| | : | |
| XAVIER DIAZ | : | NOVEMBER 14, 2019 |

GOVERNMENT'S SENTENCING MEMORANDUM

The Government respectfully submits this memorandum in connection with the sentencing of defendant Xavier Diaz (hereafter referred to as "Diaz" or "the defendant"), which is currently scheduled for November 25, 2019.   For the reasons discussed herein, the Government believes a Guideline sentence of 60 months is appropriate in the instant matter.

Summary of Investigation

A drug trafficking organization (DTO) led by Xavier Diaz, a.k.a. "Coco" has been the most prolific heroin distribution ring in Willimantic, Connecticut, for the past few years.   Diaz used a runner system to distribute heroin whereby addicts called a shared runner phone and one of the runners would meet users to sell heroin.   Diaz's distribution, via a runner, is linked to the overdose death of G.R. in November 2017.   Diaz also directly distributed heroin to a confidential witness, identified in this investigation as CW-6, who overdosed and survived in May 2018.

During the investigation, law enforcement interviewed multiple cooperating sources. Each of the sources reported essentially the same recitation regarding the runner phone and the abundant distribution of "Coco's heroin."

A cooperating defendant, identified in this investigation as CD-1, pled guilty to the

1

distribution of heroin that resulted in G.R.'s death. CD-1 stated that he/she obtained the heroin for G.R. and CD-1 from Miguel LNU, one of Coco's drug runners. CD-1 identified Miguel Cruz as the drug runner Miguel LNU via a photo lineup. CD-1 also identified Henry Soto and Kimberly Roman as Coco's drug runners from whom he/she had obtained heroin, and identified Soto and Roman in photo lineups. CD-1 stated he/she observed Coco, whom he/she identified as Xavier Diaz in a photo lineup, deliver heroin to Miguel Cruz immediately prior to CD-1's purchase of heroin from Cruz. CD-1 stated that he/she was present when two other individuals overdosed from heroin supplied by Coco's runners and that he/she revived both of these individuals.

A confidential witness, identified in this investigation as CW-2, stated that he/she purchased heroin from individuals later identified by CW-2 in a photo lineup as Cruz, Moises Rivera, Jesus Omar Vazquez-Martinez, and Roman. He/she also testified that an individual identified by photo lineup as Jorge Rosado drove Moises Rivera to distribute heroin. CW-2 stated he/she had also purchased heroin directly from Diaz, asserting that CW-2 had last purchased heroin directly from Diaz in approximately April 2018.

A confidential witness, identified in this investigation as CW-3, stated that he/she purchased heroin regularly from Vazquez between summer 2017 until Vazquez's arrest on state narcotics charges in April 2018. CW-3 identified Vazquez, Moises Rivera, and Cruz via photo lineups as drug runner distributing heroin for Coco from whom CW-3 purchased heroin.

A confidential witness, identified in this investigation as CW-4, stated that he/she purchased heroin regularly from Vazquez and Cruz. CW-4 reported that Roman also delivered heroin to CW-4 after CW-4 ordered heroin from Cruz via the drug runner phone. CW-4 further

stated that Soto was another drug runner from whom he/she purchased heroin. CW-4 identified Vazquez, Cruz, Roman, and Soto via photo lineups.

A confidential source, identified in this investigation as CS-5, reported that he/she bought heroin from Diaz and his runners for approximately five years. CS-5 reported that the last time he/she had obtained heroin was in April 2017 when he/she purchased heroin from Moises Rivera and nearly died from an overdose.

CW-6 stated that he/she nearly died from an overdose in Diaz's home in May 2018 after using a single bag of fentanyl. CW-6's medical records reflect ambulance transport for the overdose and the presence of opioids in CW-6's urine. Sonely Rivera was present at the time CW-6 overdose and called 911.

Law enforcement seized physical evidence from Diaz and his runners, including over $3,000 in suspected narcotics proceeds from Vazquez in March 2018, ten bags of heroin from Vazquez in April 2018, 300 bags of heroin from Moises Rivera in August 2018, three bags of heroin from Rosado in August 2018, ten bags of heroin from a drug customer immediately after meeting with Diaz in August 2018, just over 100 grams of heroin, as well as a stolen Colt Detective Special revolver and multiple calibers of ammunition from Sonely Rivera and Diaz's home in October 2018, and $20,230 from a safe inside a storage unit in October 2018. Subsequent search warrants for the defendants' cellular telephones provided further evidence of narcotics trafficking and collaboration by the defendants.

Procedural history

On October 29, 2019, the defendant pled guilty to Count One of the Superseding Indictment, conspiracy to distribute and to possess with intent to distribute 100 grams or more of

heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.  The parties agreed in their plea agreement that: (a) the defendant fell within Criminal History Category I, (b) the defendant's base offense level was 24, based upon a stipulated quantity of at least 100 grams but less than 400 grams of heroin, (c) two levels were added for the defendant's role in the offense, and (d) 3 levels would be subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, resulting in an adjusted offense level of 23.  The parties further agreed that a total offense level of 23 in Criminal History Category I resulted in a Guideline range of imprisonment of 46 to 57 months, which become 60 months due to the applicable mandatory minimum, and at least 4 years up to a lifetime term of supervised release.

## The Presentence Report

On November 1, 2019, the Probation Department issued a revised Presentence Report (PSR) that found the defendant's applicable total offense level to be higher than set forth in the plea agreement.  PSR ¶¶ 26-36; 74.  The Government does not have any objections to the Guideline range calculated in the PSR.[1]

## A Guideline Sentence is Reasonable in Light of the Sentencing Factors

The defendant's conduct in undeniably serious.  The tragic toll narcotic abuse wrecks on our communality is undisputable.  In this context, the defendant's crime was far from a victimless one.  He pushed 400 grams of pure poison into his community.  Indeed, this investigation began after G.R. overdosed from heroin distributed by Diaz's DTO.  As detailed above, numerous nonfatal overdoses are similarly linked to the Diaz's DTO, including one that

---

[1] In light of the plea agreement, the Government takes no position regarding the enhancements applied by the Probation Officer in the PSR.  The Government does requests that the Court give effect to the Guideline range calculated in the parties' plea agreement pursuant to *United States v. Fernandez*, 844 F.2d 1138 (2d Cir. 1989).

occurred in Diaz's own home. Yet after each of these overdoses, the DTO remained in business, regardless of the costs.

With respect to the defendant's history and characteristics, although the defendant suffered trauma in his early life, there are no events in the defendant's history that warrant a departure from the Guideline range. Further, despite a long history of substance abuse, the defendant has never completed treatment for his substance addiction until his federal arrest. *See* PSR ¶¶ 56-57. Instead, he made the decision to sell drugs, thereby inflicting pain and torment not only in his own life, but also in the lives of his family, his drug customers, and his customers' families. And it is clear that despite a firsthand appreciation for the cost drug addiction brings, the defendant chose to sell narcotics without any concern for the affect such actions had on others as evidenced, in particular, by the DTO's continued operation notwithstanding multiple overdoses. The defendant alone is responsible for his actions and inaction; he should be held accountable.

Further, the quantities of heroin Diaz distributed during the conspiracy, up to 400 grams, is far more than the quantity distributed by someone seeking merely to fund their own addiction. Instead, Diaz made selling narcotics his business, perpetrating addiction within the community without any regard for the harm he caused and for pecuniary gain. PSR ¶ 67 (reflecting nine years that he failed to hold lawful employment and thus supported himself by selling heroin). Also, rather than only selling heroin directly, Diaz utilized a runner system to more effectively distribute his heroin, further profiting through this system. Thus, the Government respectfully submits that the defendant's relative lack of criminal history fails to reflect the danger he poses to society.

Finally, the goals of deterrence, promoting respect for the law, and the need to provide just punishment are also important.  As his first term of imprisonment, a 60-month federal sentence should be a significant deterrent to the defendant as should the potential for increased penalties if he is later convicted of a subsequent federal drug offense.  The need for general deterrence is also acute given the destruction narcotics distribution wrecks on our community. Although the arrest and prosecution of individuals involved in narcotics distribution, such as the defendant, will most certainly not have an immediate impact that stems the tide, the federal incarceration of those who distribute these substances can send a powerful message.

## Conclusion

For the reasons stated above, the Government requests that the Court impose a Guideline sentence of 60 months.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

/s/ *Natasha M. Freismuth*
NATASHA M. FREISMUTH
ASSISTANT U.S. ATTORNEY
Federal Bar No. phv05772
157 Church Street, Floor 25
New Haven, CT 06510
203-821-3700

CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2019, a copy of the foregoing was filed electronically, and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system, or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

/s/ *Natasha M. Freismuth*

NATASHA M. FREISMUTH
ASSISTANT U.S. ATTORNEY